UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————x

D.S., an infant over the age of 14
years, by his mother and natural guardian,
ANNA SANADZE, and ANNA SANADZE,
individually,

                                        Plaintiffs,

        -against-

THE CITY OF NEW YORK, "DOES" 1
through 6, fictitious names intended to be police officers,
detectives, employees and/or assistants/translators,
each individually, of the NEW YORK CITY POLICE
DEPARTMENT, "DOES" 7 through 12, fictitious names
intended to be employees and assistant district attorneys,
to the OFFICE OF THE DISTRICT ATTORNEY OF
THE CITY OF NEW YORK, COUNTY OF KINGS,
THE LEGAL AID SOCIETY, FREDERIC PRATT,
JILL WECHSLER, NYC ADMINISTRATION FOR
CHILDREN'S SERVICES, DOES" 13 through 18,
fictitious names intended to be employees, guards, health
care providers, each individually, at
CROSSROADS SECURE JUVENILE DETENTION
CENTER, "DOES" 19 through 34, persons intended to
be employees, guards, health care providers,
each individually, at GOSHEN SECURE CENTER,
BROOKWOOD SECURE CENTER, and ROCKLAND
CHILDREN'S PSYCHIATRIC CENTER,

                                        Defendants.

———————————————————————x

Case No.
1:14-cv-06963-SJ-JMA

AMENDED (PROPOSED)
COMPLAINT AND
JURY DEMAND

(pursuant to 04/13/17 Order)

        D.S., an infant over the age of 14 years, by his mother and natural guardian,

ANNA SANADZE, and ANNA SANADZE, individually,  by their attorney, Vera Gretchyn

Marino, state  as Proposed Amended Complaint and Jury Demand only against defendant, City

of New York, pursuant to 4/13/2017 Court order, as follows:

## **INTRODUCTION**

1.      This is an action for the wrongful acts of the defendants  THE CITY OF NEW YORK (the City), "DOES" 1 through 6, fictitious names intended to be police officers, detectives, employees  and/or assistants/translators,  each individually, of the City,  "DOES" 7 through 12, fictitious names intended to be employees and assistant district attorneys, to the OFFICE OF THE DISTRICT ATTORNEY OF THE CITY OF NEW YORK, COUNTY OF KINGS (District Attorney), THE LEGAL AID SOCIETY (Legal Aid), FREDERIC PRATT (Pratt), JILL WECHSLER (Wechsler), NYC ADMINISTRATION FOR CHILDREN'S SERVICES (NYC Administration) , DOES" 13 through 18, fictitious names intended to be employees, guards, health care providers, each individually,  at CROSSROADS SECURE JUVENILE DETENTION CENTER (Crossroads), "DOES" 19 through 34, persons intended to be employees, guards, health care providers, each individually, at GOSHEN SECURE CENTER, (Goshen),  BROOKWOOD SECURE CENTER (Brookwood), and ROCKLAND CHILDREN'S PSYCHIATRIC CENTER (Rockland) , in violation of the plaintiffs' rights secured by 42 U.S.C. Section 1983, 42 U.S.C. Section 1988, 28 U.S.C. Sections 1331 and 1343, and the First,  Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the United States.

2.      Plaintiffs allege that beginning October 23, 2011 through infant plaintiff's conviction and sentencing in or about July, 2012, by the defendant, the City,  and continuing to the present date, present incarceration status of the infant plaintiff, and through all prior incarcerations, court appearances and those in the future, defendants, acting independently and/or cumulatively and severally with the defendants,  committed wrongful,  illegal and negligent acts against the infant plaintiff, D.S., falsely imprisoning the infant plaintiff, negligently causing physical injury to plaintiff, intentionally and/or negligently inflicting physical injuries, sexual

assaults and abuse, physical and emotional assaults and abuse and/or emotional distress, were negligent in the hiring and retaining of incompetent and unfit officers, detectives, employees, guards exercising dominion over the infant plaintiff, were negligent in the training, instruction and supervision of their officers, detectives, employees,, and guards, and deprived the plaintiffs of an attorney when requested, coercively and fraudulently induced the infant to sign a confession, deprived the infant plaintiff's mother, Anna Sanadze, of her parental rights, inflicted cruel and unusual punishment upon the infant plaintiff, denied the infant plaintiff necessary medical treatment, improperly administered drugs to the infant plaintiff, violating the plaintiffs Constitutional and civil rights, and causing personal injuries and damages to the infant plaintiff and derivative damages to his mother, plaintiff, Anna Sanadze.

3.     In or about July, 2012, plaintiffs allege that the defendants, cumulatively and severally, failed to diagnose and treat infant plaintiff's mental, cognitive, language, learning disabilities, psychiatric and medical conditions, and to take into consideration the infant plaintiff's deficits, immaturity and inability, at 14 years of age, to make any knowledgeable or intelligent decision or waivers to choose the sentence imposed upon him, arising from his unlawful criminal conviction, which choice, put to him were "prison for 4 years or psychiatric hospital for 1 year." This child was allowed to choose by himself, and his mother was deprived of her parental rights, as his protector and natural guardian, to choose what was best for him. This child chose prison.    These events resulted in the unlawful conviction and incarceration of the infant plaintiff by the City.

4.     The defendant, the City, through its agencies and employees, deprived the infant plaintiff of an attorney, although requested by his mother, and fraudulently and coercively

3

induced the infant plaintiff to sign a confession on the promise to his mother that the infant plaintiff would be released to her to go home with her.

   5.  The selection of incarceration for the infant plaintiff was determined by the defendant, the City, which subsequently, following conviction, engaged with payment for its benefit, as its de facto agencies, acting for and in the interests of the City, the New York State incarceration facilities at Goshen and Brookwood, to apply and execute the incarceration of the infant plaintiff, where the individual defendants, identified fictitiously as "DOES" 1 through 34, committed wrongful acts, rape, physical and emotional assault and battery upon the infant plaintiff, in violation of his constitutional rights, as herein set forth.

   6.  Upon information and belief, Brookwood engaged the medical services of Rockland, where acts of medical negligence were committed against the infant plaintiff, in the improper administration of drugs to the infant plaintiff, and/or improper instructions to Brookwood, concerning the proper administration of drugs to the infant plaintiff, which caused life threatening permanent injuries and Rhabdomyolysis, cruel and unusual punishment, physical and psychological injuries and denial of timely and appropriate medical and psychological treatment, while the infant plaintiff was in the custody of these facilities defendants, and came under the dominion and control of the individual employees of these facilities, who are individual defendants, "DOES" 19-34.

   7.  The unconstitutional actions of the employees of defendants, "DOES" 1 through 34 occurred because of an official policy or custom and neglect of the City, that caused the infant plaintiff to be subjected to a denial of his constitutional rights, and occurred further because the defendant, the City, had a policy concerning the children in its precincts, to obtain confessions without regard to constitutional rights of its children, residing in its municipality.

8.      The unconstitutional actions of the individual employees that occurred at the facilities at Goshen and Brookwood, operated by the New York State Office of Children and Family Services, whose facilities and individual employees, the City engaged, for its benefit, as its de facto agents to execute its incarceration of the infant plaintiff,   caused the infant plaintiff mental, emotional and physical suffering, and occurred to the infant plaintiff because of a policy of neglect, indifference, negligence and recklessness in employing incompetent, untrained employees, and agents, with a propensity for abuse of children, to be in dominion of the children, including the infant plaintiff, who was for was in the custody of the City.

9.      The unconstitutional actions of the individual employees that occurred at the facility of Rockland,  operated by the New York State Office of Mental Health, whose facilities Brookwood engaged,  caused the infant plaintiff to sustain mental, emotional and physical suffering, life threatening permanent injuries and Rhabdomyolysis, cruel and unusual punishment,  physical and psychological injuries and denial of timely and appropriate medical and psychological treatment, because of a policy of neglect, indifference, negligence and recklessness and failure to timely recognize  and address the abuse the infant plaintiff had endured at Goshen,  and in negligently and recklessly failing to adequately  instruct Brookwood, concerning the administration of drugs to the infant plaintiff, all which caused permanent physical and psychiatric injuries to him.

10.     The causes of the infant plaintiff's mother, Anna Sanadze,  are concurrently derivative from, and independent to her of,  the infant plaintiff's causes,  her, in the infliction of emotional pain and suffering to her, as result of these events occurring to her son, and in depriving her of her parental rights to make life decisions for her son, as his mother, protector and natural guardian, causing her to sustain damages.

5

11.     The defendant, the City and Legal Aid negligently allowed the infant plaintiff to make life decisions and choices himself, and to choose prison over psychiatric hospital treatment, at a time when he was psychologically, mentally impaired, developmentally impaired and too young to cognitively and knowledgably make life determinations and choices for himself, a violation of the infant's plaintiff's constitutional rights and the plaintiff, Anna Sadnaze's parental rights.

12.     Plaintiffs seek compensatory and punitive damages, a declaration that defendants violated plaintiffs' constitutional rights, an award of costs and attorneys' fees, and such other and further relief as the Court deems equitable and just.

## JURISDICTION

13.     This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because this action presents a federal question and is brought to address the deprivation under color of state law of rights, privileges and immunities secured by the Constitution and laws of the United States.

14.     Supplemental jurisdiction is asserted over the agencies allegedly operated by the State of New York, pursuant to 28 U.S.C. § 1367, because the maintenance, custody, management, control of the infant plaintiff towards the final disposition and fulfillment of the infant's incarceration by the defendant, the City, was at all times with the City, delegated the infant plaintiff's incarceration and treatment to agencies of the State of New York, thereby, engaging the facilities of the State of New York, as its own agencies or de facto agencies to itself, which are: Goshen, Brookwood, and Rockland, to execute the infant's plaintiff's sentencing requirements after his conviction. Upon information and belief, the defendant, the

6

City never, at the relevant times herein stated, relinquished management, control and final disposition, determination and fulfillment of the infant's incarceration and the order of the City. .

15.    Supplemental and original jurisdiction is asserted over "DOES" 19-34, the agents, servants and/or employees, individually, of the facilities, "DOES" 19-34, of

16.    Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## THE STATE OF NEW YORK

17.    Plaintiffs are Claimants in an action pending in the Court of Claims, State of New York, in the action, "Daniel Sanadze, an infant under the age of 14 years, by his mother and natural guardian, Anna Sanadze, and Anna Sanadze, Claimants, v. The State of New York, Claim No. 123548 (exempt from the redaction requirement pursuant to *Federal Rules of Civil Procedure, Rule 5.2 (b) (2), (3) and (4)* ) for negligence and medical malpractice, arising from some of the same facts and events herein pleaded.

18.    The claim on behalf of the infant claimant and claimant's mother, pending in the Court of Claims, Claim No. 123548 (paragraph "17" herein), has been stayed by Order of Hon. Stephen J. Mignano, Judge of the Court of Claims, on January 12, 2016, pending disposition of this federal action, which involves the multiple defendants sued herein, over which, the Court of Claims, except for the State of New York has not jurisdiction.

19.    Goshen, Brookwood and Rockland were the facilities in which additional injuries were sustained by the infant plaintiff as a result of their negligence, while the infant plaintiff was incarcerated therein.   Upon information and belief, the City engaged Goshen, Brookwood and Rockland as its agents through the State of New York, and/or as de facto agents for the benefit of the defendant the City in the incarceration of the infant plaintiff.

7

20.     Plaintiffs state that substantial claims of the injuries to the infant plaintiff, including those that are stayed in the Court of Claims against the State of New York, derive from a common nucleus of operative fact of all the defendants sued herein, and are such that plaintiff would ordinarily be expected to try them all in one proceeding.   Consequently, plaintiffs allege that this Court's exercise of its supplemental jurisdiction over the New York State facilities Goshen, Brookwood and Rockland is warranted, in addition to the personal jurisdiction over "DOES" 19-34, the employees of these said facilities.

**VENUE**

21.     Venue is appropriate under 28 U.S.C. § 1391 (b) because all of the events giving rise to the claims asserted herein arose in the Eastern District of New York and, upon information and belief, all defendants reside in this district.

**PARTIES**

22.     Plaintiffs were at all relevant times residents of the County of Brooklyn, State of New York and the United States of America.   Plaintiffs' address is 6401  24th Avenue, Apt. F4, Brooklyn, New York 11024.

23.     Infant plaintiff, D.S., is currently,  or was until recently, incarcerated at August Aichorn RTF-JJ, 2050 Dean Street, Brooklyn, New York 11233, a not profit corporate and/or other entity, where the defendant, the City retained or retains custody, management and control of the infant plaintiff to the present.

24.     Defendant the City was and is a governmental and/or municipal entity, duly organized and existing under and by virtue of the laws of the State of New York, located at 1 Centre Street, New York, NY, 10007, and at Corporation Counsel, Law Department, 100

8

Church Street, New York, New York 10007, and the municipality and authority of the infant plaintiff's conviction, sentencing, incarceration, and ultimate fate.

25.     Defendant NEW YORK CITY POLICE DEPARTMENT (NYC Police) was and is an agency of defendant the City, located at 1 Centre Street, New York, NY, 10007 and at Corporation Counsel, Law Department, 100 Church Street, New York New York 10007, and the agency which arrested, fraudulently and coercively obtained the infant plaintiff's confession and submitted the information upon which the infant plaintiff was convicted of a crime.

26.     Defendants "DOES" 1 through 34, upon information and belief, are residents of the State of New York, and the United States of America.

27.     At all relevant times, defendants "DOES" 1 through 6 were employed by defendant, the City and/or NYC Police, its agency, as police officers, detectives, assistants/translators and/or higher ranking officials and were acting within the scope of their employment and under color of state law.

28.   At all relevant times, the District Attorney, was and is an agency of defendant, the City, located at 350 Jay Street, #10, Brooklyn, New York 11201, and at Corporation Counsel, Law Department, 100 Church Street, New York New York 10007, and is the agency which prosecuted and convicted the infant plaintiff of a crime.

29.     At all relevant times, defendants, "DOES" 7 through 12, were residents of the State of New York, United States of America, and persons who were employed by the agency of the City known as the District Attorney, and were acting within the scope of their employment and under color of state law.

30.     At all relevant times, defendant, Legal Aid, was a not-for-profit charitable organization, organized under 501 (c ) (3) of the Internal Revenue Code, doing business in the County of Kings, at 111 Livingston Street, Brooklyn, New York 11201, and the entity which allegedly defended the infant plaintiff against the criminal charges lodged against him and represented the infant plaintiff at the time of his sentencing.

31.     At all relevant times, defendant, Pratt, was a resident of the State of New York, United States of America, and an attorney employed by defendant, Legal Aid, at 111 Livingston Street, Brooklyn, New York 11201 as a staff attorney acting within the scope of his employment in the Criminal Defense Practice, Adolescent Intervention Diversion Team of this defendant, and allegedly defended the infant plaintiff against the criminal charges lodged against him and represented the infant plaintiff at the time of his sentencing.

32.     At all relevant times, defendant, Wechsler, was a resident of the State of New York, United States of America, and a forensic social worker, employed by defendant, Legal Aid, at 111 Livingston Street, Brooklyn, New York 11201, acting within the scope of her employment in the Criminal Defense Practice, Defender Services Program of this defendant, and allegedly assisted defendant Pratt in the defense of the infant plaintiff against the criminal charges lodged against him and assisted defendant Pratt at the time of the infant plaintiff's sentencing.

33.    At all relevant times, defendant, NYC Administration (for Children's Services), was an agency of the City,  and its agents, servants and/or employees, were located at 150 William Street, New York, New York 10038, who operated, managed and controlled Crossroads  for defendant, the City,  when the infant plaintiff was incarcerated, assaulted and injured  at that facility.

34.    At all relevant times, defendant, Crossroads,  located at 17 Bristol Street, Brooklyn, New York 11212, was an agency of the defendant, the City, which incarcerated the infant plaintiff.

35.    At all relevant times, defendants, "DOES" 13 through 18,  were residents of the State of New York, United States of America, and persons who were employed by defendant, Crossroads, as prison officials, guards, health care providers and/or staff and acting within the scope of their employment and under color of state law, at a time when the infant plaintiff was incarcerated in that facility.

36.    At all relevant times, defendant, NYC Administration, its agents, servants and/or employees, located at 150 William Street, New York, New York 10038, operated, managed and controlled Crossroads for defendant, the City, at a time when the infant plaintiff was incarcerated at that facility.

37.    At all relevant times, defendant, Goshen, was a prison facility, operating at 97 Cross Road, Goshen, New York 10924, and operated, managed and controlled by New York State Office of Children and Family Services, which obtained custody of and authority over the infant plaintiff from the defendant, the City, and/or its agencies, and maintained temporary custody of and authority over the infant plaintiff for the benefit of the City in or about 2012 and 2013.

38.    At all relevant times, Brookwood was a prison facility, operating at 419 County Route 29, Claverack, New York 12513, and operated, managed and controlled by New York State Office of Children and Family Services, which obtained custody of and authority over the infant plaintiff from the defendant, the City, and/or its agencies, and/or from Goshen, . and maintained temporary custody of and authority over the infant plaintiff for the benefit of the City, in or about 2013 and 2014.

39.    At all relevant times, defendant, Rockland, was a facility operated, managed and controlled by the New York State Office of Mental Health, operating at 2 First Avenue, Orangeburg, New York 10962, which obtained custody of and authority over the infant plaintiff from the defendant, the city, and/or its agencies, and/or from defendant, Brookwood, and maintained temporary custody of and authority over the infant plaintiff for the benefit of the City, in or about 2013 and 2014.

40..    At all relevant times, defendants, "DOES" 19 through 34, were residents of the State of New York, United States of America, and persons who were employed as prison officials, guards, health care providers and/or staff and acting within the scope of their employment with Goshen, Brookwood and Rockland, at a time when the infant plaintiff was incarcerated or maintained at these facilities.

41.    At all relevant times, defendants, the City, "DOES" 1 through 6, fictitious names intended to be police officers, detectives, employees and/or assistants/translators, each individually, of the NYC Police, "DOES" 7 through 12, fictitious names intended to be employees and assistant district attorneys, to the District Attorney, Legal Aid, defendants Pratt and Wechsler, NYC Administration, DOES" 13 through 18, fictitious names intended to be employees, guards, health care providers, each individually, at Crossroads, "DOES" 19 through 34, persons intended to be employees, guards, health care providers, each individually, at Goshen, Brookwood and Rockland, in violation of the plaintiffs' rights secured by 42 U.S.C. Section 1983, 42 U.S.C. Section 1988, 28 U.S.C. Sections 1331 and 1343, and the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the United States, acted in concert and/or, cumulatively, and/or severally, and/or in collaboration with, and/or as agencies and/or defacto agencies of the the City, concerning the consequences to, and maintenance, management, control and treatment of the infant plaintiff, arising from an event, which occurred on or about October 23, 2011, involving the infant plaintiff, and subsequent conviction of the infant plaintiff in the Criminal Court of the City of New York, Part APAR, County of Kings, as a consequence of that said October 23, 2011 event.

42.    The ultimate conclusion of the fate of the infant plaintiff, continued incarceration or release or fulfillment of his sentence following his conviction, continues and

13

remains to the present, exclusively, with the defendant, the City, and its agencies, which retain the original as well as final disposition and satisfaction of the criminal conviction of the infant plaintiff, despite the City's delegation of custody, maintenance, management, control and treatment of the incarceration of infant plaintiff, to the defendants, Goshen, Brookwood, and Rockland, its de facto agencies engaged by the defendant, the City, to fulfill its determination of incarceration and sentence of the infant plaintiff's sentence, for the benefit of the City.

43.     Upon information and belief, on or about October 25, 2011, the defendant, the City, engaged the services of defendants, Legal Aid, Pratt and Wechsler, to represent, as his attorney, the infant plaintiff, in the charges lodged against him in the Criminal Court of the City of New York, Part APAR, County of Kings.

## FACTUAL ALLEGATIONS

44.     The initial arrest incident in question took place on or about October 23, 2011, a Sunday, when the infant plaintiff, who was Russian/Georgian speaking, learning disabled, with deficiencies in the English language, 14 years of age and attending 8th grade special education in school, was arrested by an officer from the 60th Precinct, NYC Police, in Brooklyn, New York, and taken to the said Precinct.

45.     On October 23, 2011, the infant plaintiff's mother, Russian/Georgian speaking Anna Sanadze, deficient in English, was telephoned and brought by an officer from the said 60th Precinct, to the said Precinct, at approximately 6 p.m., where she observed that the infant plaintiff was in a cell. An officer from the 60th Precinct told the infant's mother and stepfather, Eugene Sanadze, through another officer/translator, identified as Tatyana, that "your son had a fight" with another boy, of similar age, M.L. (name redacted pursuant to this Court's

14

12/2/2014 Order),  who was a judo classmate of the infant plaintiff, in which M. L. was injured with a knife struck by the infant plaintiff.

46.    At the said Precinct, a Detective, two police officers through  an officer/translator,  named "Tatyana"  asked the infant plaintiff to write a statement.   The infant plaintiff's mother said, to the translator, that her son cannot write English well, that he is in special education and asked for a lawyer for her son, to which the translator replied to her that if she wanted an attorney, the infant plaintiff and his parents would be there for a long time, but if her son writes a statement now, they (infant plaintiff and his parents) could leave and all go home.   Relying on the promise of the translator, the infant plaintiff's  mother told her son to write a statement.   After the infant plaintiff wrote a statement, the infant plaintiff's mother was told that the infant plaintiff could not go home with her.

47.    The police officer, Tatyana, tricked the infant plaintiff and his mother into an incompetent confession from the infant plaintiff.

48.    The infant plaintiff's statement was introduced by the District Attorney into the hearings at  Criminal Court of the City of New York, Part APAR, County of Kings. against the infant, which resulted in his conviction, and which, upon information and belief, took place in early 2012, recorded in sealed records.

49.    Upon information and belief, at all of the hearings which resulted in the infant plaintiff's conviction, no translator from Russian or Georgian, the infant plaintiff's native languages, to English,  was made available to him, or his mother, Anna Sanadze, and she was not consulted as to her preference, as mother and natural guardian, concerning the proceedings, prosecution,  consequences of conviction and/or placement and/or incarceration of her son, the infant plaintiff.

50.     Upon information and belief, during the proceedings against the infant plaintiff, the Court appointed defendant, Legal Aid, to defend and represent the infant plaintiff in the prosecution against him which resulted in his convictions of assaults on the boy, M. L., and to protect his constitutional rights and privileges.

51.     Prior to the October 23, 2011 incident, the infant plaintiff's IQ was found, in 2006, to be 66, which placed this child in the intellectual range of mild mental retardation, and later, in 2009, found to be below average range.   The infant plaintiff was under psychiatric treatment between May 23, 2007 to September 14, 2011, interrupted by the event of October 23, 2011, with Serge A. Mitelman, M.D., Associate Professor of Psychiatry, Mount Sinai School of Medicine, Director, Child Psychiatry Inpatient Services, Elmhurst Hospital Center, 6415 Bay Parkway, Brooklyn, New York 11204, and a division of the New York City Health and Hospitals Corporation, Affiliated with Mt. Sinai School of Medicine.   His clinical diagnosis as of November 24, 2011 was DSM-IV, Axis I – Oppositional-Defiant Disorder (313.81) vs. Conduct Disorder, childhood-onset, type (312.81);   Social Anxiety Disorder (300.23);   Mixed-Receptive-Expressive Language Disorder (314.32);   Reading Disorder (315.00);   Developmental Coordination Disorder (315.4);   Asperger's Disorder, provisional (299.80);   Adolescent Antisocial Behavior (V71.02);   Axis II – Borderline Intellectual Functioning (V62.89); Paranoid and personality traits;   Axis III – None;   Axis IV – Social Isolation and Anomie, Academic Problems, Abandonment by biological father;   Axis V – 40 (as of September, 2011). Dr. Mitelman's November 24, 2011 report highly recommended that a pharmacological regimen of antipsychotic agents and intensive remediation of communicative and social skills be provided to the infant plaintiff in a residential treatment facility (RTF).   Upon information and belief, Dr. Mitelman's November 24, 2011, March 10, 2010 and July 15, 2009 reports were

16

known to the District Attorney, the City, NYC Administration, Legal Aid, Pratt, Wechsler, and "DOES" 1 through 12, prior to the conviction and sentencing of the infant plaintiff to 4 years in prison by the Court in the Criminal Court of the City of New York, Part APAR, County of Kings.

52.     For several months prior to the October 23, 2011 incident, the infant plaintiff perceived himself to be bullied by the boy, M.L., as well as his family's Georgian honor being challenged, by the boy, M.L.'s alleged epithets and slurs of derogation about infant plaintiff's mother, stated to him by the boy, M.L., all of which, in infant plaintiff's impaired psychiatric and learning disabled state, propelled him into believing that he was compelled to defend the honor of his family by physically confronting M.L.

53.     Upon information and belief, the District Attorney, the City, NYC Administration, Legal Aid, Pratt, Wechsler and "DOES" 1 through 12, representing and defending the criminal charges against the infant plaintiff, knew, or should have known at the time of the criminal hearings, conviction and sentencing of the infant plaintiff, that the infant plaintiff was mentally handicapped and psychiatrically impaired, required medication, as described in the preceding paragraphs herein, and did not adequately present this evidence to the Court who sentenced the infant plaintiff, which constituted ineffective counsel for the infant plaintiff in the criminal charges against him, together with additional errors in representation herein set forth.

54.     Upon information and belief, the individual "DOES" 7 through 12, employees of the District Attorney, prosecuting the criminal charges against the infant plaintiff, knew, or should have known at the time of the criminal hearings, conviction and sentencing of the infant plaintiff, that the infant plaintiff was mentally and psychiatrically impaired, required

medication, as described in the preceding paragraphs herein, and did not adequately present this evidence to the Court who sentenced the infant plaintiff, which violated the obligation of this defendant to reveal evidence in exoneration or mitigation of the criminal charges against the infant plaintiff.

55.     Upon information and belief, in May or June, 2012,  at the time of sentencing of the infant plaintiff, following his conviction of criminal assault, the Court inquired of the mentally and psychiatrically impaired 14 year old infant plaintiff to choose as a consequence of his conviction, 4 years in prison or 1 year in a psychiatric hospital, and upon information and belief, the infant plaintiff told the  Court that he chose 4 years in prison, upon which request from the infant plaintiff, the Court sentenced the infant plaintiff to 4 years in prison.

56.     At the time of the sentencing of the infant plaintiff in the Criminal Court of the City of New York, in or about May or June, 2012, the infant plaintiff was not competent to make an informed or knowledgeable choice between 4 years in prison or 1 year in a psychiatric hospital as the consequence of his criminal conviction.

57.     At the time of the sentencing of the infant plaintiff in the Criminal Court of the City of New York, in or about May or June, 2012, the infant plaintiff's mother, plaintiff, Anna Sanadze, natural guardian of the infant plaintiff, was the person who was competent to make an informed or knowledgeable choice between 4 years in prison or 1 year in a psychiatric hospital, for her son,  as the consequence to his criminal conviction, and was deprived of her parental rights by not being consulted in this choice and decision.

58.   The infant plaintiff's constitutional rights were violated, in that the infant plaintiff was mentally handicapped and psychiatrically incompetent to elect, for himself,

18

between 4 years in prison or 1 year in a psychiatric institution, as he was allowed to do, that he and his mother were English deficient and deprived of interpreters, and the infant plaintiff was consequently deprived of meaningful, competent communication, understanding and speech, about himself, at his sentencing, and additionally, deprived the infant plaintiff of due process.

59.     That incarcerating, in a prison facility, the infant plaintiff, who was mentally and psychiatrically impaired, and in need of psychiatric treatment, constituted cruel and unusual punishment, in violation of the infant plaintiff's constitutional rights.

60.     Following infant plaintiff's conviction and sentencing in or about May/June, 2012, he was incarcerated at the facility of the defendant, Crossroads, owned and operated by the defendant, the City,  where, as practically the only white child, among children of color, he was, as result of negligence and improper supervision of the staff at this facility, assaulted and severely beaten, sustaining concussive injuries to his face, right eye and head,  and was denied adequate medical attention.   The infant plaintiff remained there without medication or psychiatric treatment until he was transferred, on July 10, 2012, by  Crossroads to Goshen, a facility owned and operated by the State of New York, where he remained without appropriate medical or psychiatric treatment, and where  additional trauma, violations, injuries and medical negligence/medical malpractice occurred to him, as hereinafter set forth.

61.     Upon information and belief,  prior to the assault and beating of the infant plaintiff, during the incarceration of the infant plaintiff at Crossroads as practically the only white child, among practically all black inmates, the prison officials and guards knew or should have known  that the black inmates at their facility, Crossroads, were hostile to, because they had previously verbally expressed their hostility to,  white inmates, and knew or should have known that black inmates threatened white inmates with violence and assaults,  because there had been e

preceding assaults by black inmates on white inmates.    Crossroads prison officials and guards knew or should have known that the infant plaintiff was under a substantial risk of serious harm, that assaults by black inmates on white inmates were expected to occur,  and yet, the prison officials and guards  were indifferent to the safety of the white infant plaintiff, who they knew or should have known that black inmates were hostile to white boys, because they had, previously expressed their hostility and openly threatened and assaulted white boys, and to the infant plaintiff.   Yet, the prison officials and guards permitted the hostility of the black inmates to escalate and continue, resulting in the assault and beating of the infant plaintiff by hostile black inmates, the infant plaintiff was in their custody.     Additionally, the defendant, the City, as a result of this conduct at Crossroads,  consequently deprived the infant plaintiff of equal protection of the law, because it intentionally discriminated against  the infant plaintiff on the basis of his white race and foreign origin, by thrusting the white infant plaintiff into the midst of hostile black inmates, who had declared, to them and others, their hostility to the infant plaintiff.

62.    That at all the times hereinafter mentioned, Crossroads was a facility owned, operated and staffed by the defendant, the City.

63.    That the aforedescribed  indifference of the prison officials and guards at Crossroads to the infant plaintiff was deliberate, and continued to withholding timely medical attention from the plaintiff for the injuries he sustained as a result of the said assaults and beating, and for his psychiatric and mental condition, described in paragraph 48 herein.

64.    From July 10, 2012 to August 29, 2013, while at the facility of the defendant, Goshen,  infant plaintiff was physically, mentally, verbally and emotionally assaulted, tortured, raped and sexually abused by a guard or guards and/or inmates, medically,

20

psychiatrically neglected and deprived of appropriate medication and treatment, suffered from profuse rectal bleeding, tremors, inability to speak, to consume food, the onset of acute terror and fear, was placed in solitary confinement, and deprived of activities.   As a result, the infant plaintiff became suicidal.   During this period, infant plaintiff was told by a guard that the guard had raped the infant plaintiff's sister, Nina, and that she was pregnant by the guard, causing emotion distress to the infant plaintiff.   During this period, infant plaintiff was threatened by a guard and/or guards not to inform his mother or sisters about the sexual abuse and trauma he endured at the hands of the guard and/or guards and/or inmates on threat of harm to his mother and sisters, and falsehoods about his family, designed to thrust infant plaintiff into despair, which did do so.  These events occurred when the infant plaintiff was confined to Block Cell 6 at Goshen.   Infant plaintiff was subsequently removed to Block Cell 5 at Goshen.   During this period, infant plaintiff was treated at Orange Regional Medical Center, in Middletown, New York, for rectal bleeding.

   65. Upon information and belief, on or about August 29, 2013, at about 3:00 a.m., infant plaintiff's mother, plaintiff ANNA SADNAZE, first became aware of abuses and injuries to her son, which had been occurring at defendant's, Goshen, when she received a telephone call from her son, who stated to her that he no longer wished to live and asked her for her forgiveness because he was going to commit suicide. On or about September 24, 2013, the infant plaintiff's mother, plaintiff, ANNA SADNAZE, consulted an attorney and first learned that her and her son's constitutional rights had been violated in the prosecution, conviction and incarceration of her son and that the plaintiffs had reasonable grounds for causes of action against the defendants for violation of constitutional civil rights and injuries and abuses to the infant plaintiff while incarcerated at the facilities of defendants, Crossroads, Goshen and

Brookwood, and later thereafter learned of the malpractice and injuries therefrom that occurred at Rockland. In December, 2013, plaintiff, ANNA SADNAZE, first became aware that she had reasonable grounds for causes of action against the defendants for medical negligence/medical malpractice, which occurred to her son, the infant plaintiff, while in the care and custody of defendants, Goshen, Brookwood and Rockland, because of denial of appropriate medical treatment, improper and negligent administration of drugs and improper medical and psychiatric treatment.

66. In or about September, 2013, infant plaintiff was transferred to the facility of defendant, Brookwood, thereafter transferred to the facility of defendant, Rockland, and intermittently returned to Brookwood, with instructions from Rockland to the staff at Brookwood, concerning the administration of certain drugs and medications to the infant plaintiff, which were not followed by the staff at Brookwood, and/or negligently administered and/or prescribed, constituting medical negligence and/or medical malpractice, and a departure from the accepted standard of medical care, which caused the infant plaintiff to sustain severe additional physical, emotional and neurological injuries, among which were Rhabdomyolysis, permanent damage to internal organs, nerve system, muscles, kidneys, brain, blood composition, incontinence, loss of cognition and mental and emotional incapacity, and near death medical status.

67. From September, 2013 through July, 2014, infant plaintiff was hospitalized and treated at Nyack Hospital, New York Presbyterian Health Care System, in Nyack, New York, and at Rockland.

68.     In July, 2014, infant plaintiff was transferred from Rockland to August Aichorn RTF-JJ (Aichorn) , in Brooklyn, New York, a not for profit corporate facility.

69.     That from the time of the infant plaintiff's conviction and sentencing in or about May/June 2012 to his release Aichorn,  the defendant, the City, maintained  ultimate, final control and decisions concerning  the consequences and occurrences to, and medical and hospital treatment and confinement of, the infant plaintiff as a result of his conviction, and conferred with the defendants,  acting as  de facto agencies for itself, the City, or as sub-contractors to the City.

70.     Plaintiffs have duly and timely served Notices of Claim upon the City of within 90 days of the plaintiff's mother acquiring knowledge that the plaintiffs had reasonable grounds to commence causes of action against the defendants for the injuries and assaults to her son, the infant plaintiff,  her acquiring knowledge of the  ineffective counsel to her son resulting in his criminal conviction, and her acquiring knowledge of the medical negligence/medical malpractice occurrences to her son.   A hearing pursuant to General Municipal Law 50-h was held on July 17, 2014.   This action was commenced within one (1) year and ninety (90) days from the date, August 29, 2013,  when the infant's mother, plaintiff Anna Sanadze, became aware of the sexual assaults to her son, the infant plaintiff, while in the custody of Goshen, and within one (1) year and ninety (90) days from the date, September 24, 2013, when the infant's mother, Anna Sanadze, consulted an attorney concerning the events here stated.

71.     Plaintiffs have duly and timely served a Claim in the Court of Claims of the State of New York, against the State of New York, defendant herein,  within 90 days of the plaintiff's mother acquiring knowledge that she had reasonable grounds for causes of action against the State of New York,  because of the injuries and assaults to her son, the infant plaintiff, while at Goshen, Brookwood, and Rockland.   Plaintiffs' claims against the State of

23

New York were commenced within one (1) year and ninety (90) days from the date these claims accrued, and are now pending in the Court of Claims, State of New York, under Claim No. 123548, the status of which is stayed, pending determination of this case, as hereinbefore described.

72.     Under the circumstances of the intermittent, concurrent, collaborative, cumulative and several participation of agencies of the defendant, the City, NYC Adminstration, together with agencies of the State of New York, acting collaboratively, and/or acting as de facto or sub-contracting agencies for the benefit of defendant, the City, in the fulfillment of the custody, incarceration, maintenance, management, control, medical treatment and decisions concerning the infant plaintiff, from the time of his conviction, incarceration and custody of his person, by the City, during all of the events stated herein, in the joint participation of all of the defendants, acting in concert, cumulatively and severally, thereby demonstrating the necessity for, in the interests of judicial economy, supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, asserted against Goshen, Brookwood, Rockland, performing, as agents, sub-contractors and/or defacto agents, for the benefit of defendant, City and NYC Administration, in the fulfillment and satisfaction of the infant plaintiff's sentence.

73.     Prior to the occurrences to the infant plaintiff, the City of New York, had received notice of previous incidents of assault, neglect and indifference on the part of prison officials and guards at Crossroads, and constituted an official policy or custom and neglect of the City, and investigations had ensued against the City's practices and policies in the incarcerataion of persons..

74.     Upon information and belief, the City sub-contracted portions of the incarceration of the infant plaintiff to the State of New York, and as such, maintained oversight

and control over the infant plaintiff during his incarceration at the facilities of the State of New York..

75.     Upon information and belief, the City maintained contracts with the State of New York and its agencies, incarceration and hospital facilities for transfer of inmates under the City's control to facilities operated by the State of New York, and intermittently transferred the infant plaintiff from the facilities of the City to the facilities of the State of New York, without the City's relinquishment of its ultimate authority over the infant plaintiff.

76.     As a result of defendants' unlawful actions, and negligence, cumulatively and severally, plaintiff has suffered serious personal injuries, damages, both physical and psychological, and constitutional violations as set forth below.

## COUNT I

77.     Plaintiffs repeat reiterates and realleges all of the allegations set forth above.

78.     Defendants, cumulatively and severally, violated plaintiffs' constitutional rights, 42 U.S.C. §§ 1983 and 1988 and the First Amendment to the United States Constitution against the defendants, in abridging plaintiffs' rights to free speech.

## COUNT II

79.     Plaintiffs repeat reiterates and realleges all of the allegations set forth above.

80.     Defendants, cumulatively and severally, violated plaintiffs' constitutional rights, 42 U.S.C. §§ 1983 and 1988 in depriving infant plaintiff and his mother of legal counsel and the use of fraud and coercion in obtaining a confession from the infant plaintiff, ineffective

counsel provided to infant plaintiff, and deprivation of parental rights of plaintiff ANNA SADNAZE.

## COUNT III

81.     Plaintiffs repeat reiterates and realleges all of the allegations set forth above.

82.     Defendants, cumulatively and severally, violated plaintiffs' constitutional rights, 42 U.S.C. §§ 1983 and 1988 and the Fifth Amendment to the United States Constitution against the defendants, against self-incrimination, depriving infant plaintiff and his mother of legal counsel and the use of fraud and coercion in obtaining a confession from the infant plaintiff, ineffective counsel provided to infant plaintiff, and deprivation of parental rights of plaintiff ANNA SADNAZE.

## COUNT IV

83.     Plaintiffs repeat reiterates and realleges all of the allegations set forth above.

84.     Defendants, cumulatively and severally, violated plaintiffs' constitutional rights, 42 U.S.C. §§ 1983 and 1988 and the Sixth Amendment to the United States Constitution against the defendants, by depriving infant plaintiff and his mother of legal counsel and the use of fraud and coercion in obtaining a confession from the infant plaintiff, ineffective counsel provided to infant plaintiff, and deprivation of parental rights of plaintiff ANNA SADNAZE.

## COUNT V

85.     Plaintiffs repeat reiterates and realleges all of the allegations set forth above.

86.     Defendants, cumulatively and severally, violated plaintiffs' constitutional rights, 42 U.S.C. §§ 1983 and 1988 and the Eighth Amendment to the United States Constitution against the defendants, by inflicting cruel and unusual punishment upon the infant plaintiff, by sentencing the mentally handicapped and mentally and psychiatrically impaired infant plaintiff to prison.

### COUNT VI

87.     Plaintiffs repeat reiterates and realleges all of the allegations set forth above.

88.     Defendants, cumulatively and severally, violated plaintiffs' constitutional rights, 42 U.S.C. §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution against the defendants, by denying the infant plaintiff due process and equal protection of the law and committing abuse of process upon the infant plaintiff

### COUNT VII

### MUNICIPAL AND/OR GOVERNMENTAL LIABILITY

89.     Plaintiff repeats, reiterates and realleges all of the allegations set forth above.

90.     The City,  "DOES" 1 through 6, fictitious names intended to be police officers, detectives, employees  and/or assistants/translators,  each individually, of the NYC Police, "DOES" 7 through 12, fictitious names intended to be employees and assistant district attorneys, to the District Attorney, Legal Aid, Pratt, Wechsler,  NYC Administration, DOES" 13 through 18, fictitious names intended to be employees, prison officials, guards, health care providers, each individually,  at Crossroads, "DOES" 19 through 34, persons intended to be employees, prison officials, guards, health care providers, each individually, at Goshen, Brookwood, and Rockland  failed to take  necessary steps to prevent these occurrences to the

infant plaintiff; failed to properly train its employees, agents and/or servants in arrest/incarceration/custody procedures; failed to control and supervise its employees, agents and/or servants; failed to prevent the aforesaid pain and suffering, defamation, incarceration, violation of constitutional rights, assaults, medical negligence and/or medical malpractice, and permanent psychological injuries to the plaintiff; and were otherwise reckless, careless, and negligent.

## COUNT VIII

## DEPRIVATION OF MEDICAL TREATMENT

91.     Plaintiff repeats, reiterates and realleges all of the allegations set forth above.

92.     As a direct and proximate result of their deliberate indifference to plaintiffs' medical needs, defendants deprived plaintiff of his Constitutional rights in violation of the Fourteenth Amendment of the Constitution and are liable to plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT IX

## MEDICAL NEGLIGENCE

93.     Plaintiffs repeats, reiterates and realleges all of the allegations set forth above.

94. As a result of the medical negligence on the part of defendants, Goshen, Brookwood and Rockland, in the medically contraindicated inappropriate administration of drugs to the infant plaintiff, D.S., and/or the failure of Rockland to timely and correctly diagnose and treat the infant plaintiff and/or provide proper instructions to Brookwood for the administration of appropriate drugs to the infant plaintiff and/or the failure of Brookwood to correctly follow the instructions of Rockland in the treatment of the infant plaintiff, as previously set forth herein, the infant plaintiff sustained serious personal, physical and psychological injuries, which are permanent and progressive.

95. As a result of the serious personal, physical and psychological injuries, which are permanent and progressive in nature, to plaintiff, ANNA SANADZE's son, infant plaintiff, D.S., plaintiff ANNA SANADZE, sustained loss of services and companionship of her son, which upon information and belief are permanent and progressive.

96. Attached to this complaint is a certificate of merit and declaration concerning the medical negligence/malpractice on the part of the defendants, the City, together Brookwood and Rockland, acting on behalf of defendant, the city, as agent and/or de facto agent, and/or independently.

## COUNT X

## INTENTIONAL INFLICTION OF INJURY AND EMOTIONAL DISTRESS

97. Plaintiff repeats, reiterates and realleges all of the allegations set forth above.

98. Defendants the City and NYC Police intentionally and deliberately inflicted emotional distress upon plaintiffs by fraudulently promising infant plaintiff and his

29

mother that if the infant plaintiff would write out a statement confession, the infant plaintiff and his mother could be released and could go home.

99.     Defendant, Goshen, intentionally and deliberately and/or negligently inflicted emotional distress and physical injuries upon infant plaintiff by sexually assaulting and emotionally assaulting infant plaintiff, D.S., all of which inflicted emotional distress upon the infant plaintiff's mother, plaintiff, ANNA SANADZE.

100.     Defendant, Crossroads, intentionally, deliberately and/or negligently permitted the infant plaintiff D.S. to be assaulted and injured in its facility, and inflicted emotional distress upon infant plaintiff, which inflicted emotional distress upon the infant plaintiff's mother, plaintiff, ANNA SANADZE.

## COUNT XI

## PUNITIVE DAMAGES

101.     Plaintiff repeats, reiterates and realleges all of the allegations set forth above.

102.     The acts, conduct and behavior of the defendants warrant punitive damages.

103.     That as a result of the foregoing, plaintiffs demands judgment against the defendants in the amount which exceeds the jurisdiction of all lower courts.

## COUNT XII

## ATTORNEYS' FEES

104.    Plaintiff repeats, reiterates and realleges all of the allegations set forth above.

105.    By reason of the foregoing acts and/or omissions of defendants in violation of the First, Fifth, Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution, plaintiff has been forced to bring this lawsuit pursuant to 42 U.S.C. § 1983.

106.    Pursuant to 42 U.S.C. § 1988, plaintiff is entitled to reasonable attorneys' fees as part of the costs.

## JURY DEMAND

107.    Plaintiff demands a trial by jury in this action.

**WHEREFORE,** plaintiffs demands judgment awarding them relief in an amount greater than the jurisdiction of all lower courts:   for Counts I through X, in the sum of Forty  Million ($40,000,000) for the infant plaintiff, D. S., by his mother and natural guardian, ANNA SANADZE;   and for Counts I through X,  in the sum of Ten Million ($10,000,000) for the plaintiff, ANNA SANADZE;    for Count XI, punitive damages in an amount treble to the damages awarded;   and for XII, attorneys' fees in an amount to be awarded by the Court.


Dated, April 27, 2017, Great Neck, New York.

/s/ Vera Gretchyn Marino
VERA GRETCHYN MARINO
Attorney and Counselor at Law
Bar Code VM1737
Bar Reg. No. 1133024
175 East Shore Road, Suite 230
Great Neck, New York 11023
T 516 487 5045
C 310 487 5848
F 516 829 4699
veramarinolaw@gmail.com

<u>VERIFICATION</u>

VERA GRETCHYN MARINO, an attorney duly admitted to practice in this Court, Bar Code VM1737, Bar Registration No. 113024, admitted in the State of New York, with offices in County of Nassau, under penalty of perjury affirms that:   I have read the foregoing Proposed Amended Complaint and Jury Demand dated April 27, 2017, and know the contents thereof;  the same is true of my own knowledge, based upon information contained in my file, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters, I believe it to be true;  the reason this verification is made by me and not by one of the plaintiffs, is that the plaintiffs reside out of the County where I have my office.

Affirmed under penalty of perjury,  April 27, 2017.

/s/ Vera Gretchyn Marino
Vera Gretchyn Marino
